**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andy Kenneth MILLER, Jr.,
Defendant–Appellant.**

**No. 88–5667.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1989.

Decided March 20, 1989.

See also, D.C., 680 F.Supp. 1189.

**1068**

John W. Gill, Jr., U.S. Atty., Chattanooga, Tenn., James R. Dedrick, Asst. U.S. Atty. (argued), Knoxville, Tenn., for the U.S.

Ralph E. Harwell, Knoxville, Tenn., for defendant-appellant.

Before MILBURN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.[*]

MILBURN, Circuit Judge.

Defendant-appellant Andy Kenneth Miller, Jr., appeals his jury conviction on one count of unlawfully manufacturing 100 plants or more of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; and one count of unlawfully possessing with the intent to distribute 100 plants or more of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. For the reasons that follow, we affirm.

## I.

### A.

On September 29, 1987, defendant, along with a codefendant, was indicted in a two-count indictment. On March 29, 1988, jury trial commenced in the district court, and on March 31, 1988, the jury returned its verdict, finding defendant guilty on both counts.

Defendant was sentenced on May 25, 1988. The maximum sentence for each of the counts upon which he was convicted was a twenty-year term of imprisonment and a fine of up to one million dollars. 21 U.S.C. § 841(b)(1)(C) (Supp.1988). As to Count One of the indictment, the district court sentenced defendant to an eight-year term of imprisonment and imposed a $50,-000 fine. As to Count Two of the indictment, the court imposed an eight-year term of imprisonment and a $50,000 fine, with the term of imprisonment to run consecutively to the sentence imposed on Count One. This timely appeal followed.

### B.

The facts underlying the present case are relatively straight-forward. Defendant, a dairy farmer in upper East Tennessee, approached a fellow dairy farmer, Henry Jones, sometime in early 1987 about growing marijuana on Jones' farm. Defendant told Jones that if he allowed defendant to grow marijuana on his farm, defendant would pay Jones $25,000.00 "up front" and $250,000.00 in profits. Jones told defendant he would consider it, and then went to the Drug Enforcement Administration ("DEA") with this information.

* Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

The DEA advised Jones that he should allow defendant to plant the marijuana. Defendant, along with his codefendant, subsequently planted marijuana in two different areas of Jones' farm and cared for the crop through the summer of 1987. However, unknown to them, they were monitored through the course of the summer by a surveillance camera hidden by the DEA in a tree on Jones' farm.

At one point during the summer, defendant confronted Jones with the fact that the tops of the buds of some of the marijuana plants had been cut. Jones testified:

> Mr. Miller [*i.e.*, defendant] and I went to the patch, looked at them. We looked at tire marks. There was a couple or three cigarette butts there. It was discussed who it was. Mr. Miller told me, he said, if we catch, whoever we catch, they'll be shot. They'll be run through the silage chopper and we'll disk them up in the ground.

J.A. at 74. Jones also observed an individual identified by defendant as "one of the buyers for the pot" on his farm that summer.

Defendant and his codefendant were arrested on September 16, 1987. They had brought in a bumper crop; it was stipulated that over 1,700 marijuana plants weighing around 5,600 pounds were obtained from the Jones farm. It was further stipulated that these plants constituted marijuana, a Schedule I controlled substance. *See* 21 U.S.C. § 812.

On appeal defendant raises two issues: (1) whether Count One of the indictment charging the offense of *manufacturing* a controlled substance and Count Two charging the offense of *possession* of a controlled substance *with the intent to distribute* are separate and distinct offenses so as to permit the imposition of consecutive sentences; and (2) whether the district court abused its discretion in sentencing defendant to serve a sixteen-year term of imprisonment.

## II.

### A.

■ Defendant argues that the district court erred in imposing consecutive punishments for the same offense. He argues that manufacture of a controlled substance as charged in Count One and possession with intent to distribute as charged in Count Two constitute but one offense for which only a single penalty may be lawfully imposed. Defendant relies upon *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), wherein the Supreme Court held that "courts may not impose more than one punishment for the same offense...." *Id.* at 165, 97 S.Ct. at 2225. Defendant's argument is thus premised upon the double jeopardy clause which provides that no person "shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court made it clear that the double jeopardy clause "protects against multiple punishments for the same offense." *Id.* at 717, 89 S.Ct. at 2076 . (footnote omitted). *See also Garrett v. United States*, 471 U.S. 773, 777, 105 S.Ct. 2407, 2410–11, 85 L.Ed. 2d 764 (1985) (the double jeopardy clause provides "protection against multiple punishment for [the same] conviction"); *United States v. Benz*, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931).

The question of whether two offenses are sufficiently separate and distinct so as to permit cumulative punishment was first addressed by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There, the Court "established [the] test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment...." *Brown*, 432 U.S. at 166, 97 S.Ct. at 2226.

In *Blockburger*, the defendant was convicted of violating the provisions of the Harrison Narcotic Act by unlawfully selling specified drugs. The jury returned a verdict against the defendant on three counts of the indictment; the second, third, and fifth. The second count charged a sale on a specified day of ten grains of a drug not in the original stamped package. The

third count charged a sale on the following day to the same individual of a drug not in the original stamped package. The fifth count charged the same offense as was involved in the third count but also as having been made "not in pursuance of a written order of the purchaser as required by the statute." *Blockburger*, 284 U.S. at 301, 52 S.Ct. at 181.

The defendant contended that the second and third counts, involving two different sales but to the same individual, could not be charged as separate offenses. He also argued that the sale charged in the third count and in the fifth count constituted but one offense. The Court rejected both contentions.

First, the Court noted that the sales charged in the second and third counts, although made to the same person, "were distinct and separate sales made at different times." *Id.* The Court found that each of several successive sales constituted a distinct offense under the Act, as the Act prohibited any sale and not merely the business of engaging in selling forbidden drugs. *Id.* at 302, 52 S.Ct. at 181.

The Court's treatment of whether the third and fifth counts charged separate offenses is especially instructive in the present case. The Court stated:

> Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and section 2 creates the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold. Thus, upon the face of the statute, two distinct offenses are created.

*Id.* at 303–04, 52 S.Ct. at 181–82. The Court, however, did not stop with the above conclusion. The fact that two separate statutory provisions were involved was not determinative, as the Court viewed the issue. Instead, the Court turned to the question of whether, although separate statutes are involved, separate factual predicates must be established to prove each offense. The oft-stated test adopted in *Blockburger* is:

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether *each provision requires proof of an additional fact which the other does not.*

*Id.* at 304, 52 S.Ct. at 182 (emphasis supplied).

The Court concluded that the proof related to the sale of a drug not in the original stamped package is separate and distinct from the proof necessary to show that the sale was made not in pursuance of a written order. Thus, "each statute requires proof of an additional fact which the other does not. . . ." *Id.* (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)).

The Supreme Court, although urged to do so, *see Albernaz v. United States*, 450 U.S. 333, 338, 101 S.Ct. 1137, 1141–42, 67 L.Ed.2d 275 (1981), has not wavered from the *Blockburger* test. The test "emphasizes the *elements* of the two crimes." *Brown*, 432 U.S. at 166, 97 S.Ct. at 2226 (emphasis supplied). Thus, "[i]f each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

In *Albernaz*, 450 U.S. at 333, 101 S.Ct. at 1137, for example, defendants were charged with *conspiracy to import* marijuana in violation of 21 U.S.C. § 963 and *conspiracy to distribute* marijuana in violation of 21 U.S.C. § 846. After receiving consecutive sentences, they argued they were twice punished for a single offense; *viz.*, a conspiracy to import and distribute marijuana. *Id.* at 336, 101 S.Ct. at 1140–41. The Court, however, referring to *Blockburger* as a "rule of statutory construction," *id.* at 337, 101 S.Ct. at 1141, held that "[w]here Congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344, 101 S.Ct. at 1145. The Court found that in enacting sections 846 and 963, Congress did intend to permit

cumulative punishment for a single conspiracy, provided it had separate and distinct goals. The Court held that the statutory provisions were "unambiguous on their face [with] a legislative history which gives ... no reason to pause over the manner in which these provisions should be interpreted." *Id.* at 343, 101 S.Ct. at 1144.

Applying these principles to the present case, we find that the manufacture of marijuana and the possession with intent to distribute marijuana are "two statutory offenses [that] may be punished cumulatively," *Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980), as each offense "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. The offense of possession with intent to distribute undoubtedly can be proved without any proof of manufacture of that substance. Furthermore, the offense of manufacturing, while likely involving proof of possession, does not require any proof regarding an intent to distribute the substance. Personal consumption, for example, may be intended. *See United States v. Roberts*, 747 F.2d 537, 547 (9th Cir.1984) ("It is clearly possible to manufacture marijuana without possessing it with intent to distribute it to third parties—*i.e.*, by growing it for personal use."). Thus, each statutory offense requires proof of an additional fact which the other does not.

Defendant, however, focuses his argument on the fact that the offenses charged are not derived from "separate offenses with separate penalty provisions ... contained in distinct [statutory subsections]." *Albernaz*, 450 U.S. at 336, 101 S.Ct. at 1141. The offenses with which defendant was charged stem from a single subsection of section 841. That subsection provides:

(a) Except as authorized by this subchapter it shall be unlawful for any person knowingly or intentionally—

(1) *to manufacture*, distribute or dispense, or *possess with intent to* manufacture, *distribute*, or dispense, a controlled substance; or

21 U.S.C. § 841(a)(1) (emphasis supplied).

Defendant therefore maintains that the present case is distinguishable from *Block-*

burger, *Albernaz*, *Brown* and other cases considering similar issues where different statutory sections were involved. Defendant argues that if Congress intended the manufacture of a controlled substance and the possession with intent to distribute that substance to be separate offenses, it could have separated them into different sections or even subsections. Defendant relies on language in *Albernaz* to the effect that Congress is "predominantly a lawyer's body," aware of *Blockburger*, and thus if it intends to create two statutory offenses it should use different sections to do so. *Albernaz*, 450 U.S. at 341, 101 S.Ct. at 1143 (quoting *Callanan v. United States*, 364 U.S. 587, 594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961)). Because Congress rolled manufacturing and possession with intent to distribute into one subsection (section 841(a)(1)), defendant argues that these should be considered a single offense. We disagree.

First, as *Albernaz* and other cases subsequent to *Blockburger* have made clear, *see Whalen*, 445 U.S. at 691, 100 S.Ct. at 1437, *Blockburger* is "a rule of statutory construction" as "it serves as a means of discerning congressional purpose...." *Albernaz*, 450 U.S. at 337, 340, 101 S.Ct. at 1141, 1143. *See also Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671-72, 84 L.Ed.2d 740 (1985) (*Blockburger* is a "test of statutory construction"). Thus, the relevant inquiry is whether Congress intended separate offenses and then whether, under the double jeopardy clause, these offenses require proof of different facts in order that the prohibition against double jeopardy is not offended.

Second, although defendant places great weight on the fact that Congress placed the manufacturing and possession with intent to distribute offenses into one subsection, defendant ignores the fact that these offenses are proscribed in the disjunctive ("manufacture ... *or* possess with intent ... to distribute"), thus permitting prosecution where either offense occurs. Moreover, defendant has not shown, nor have we found, anything in the legislative histo-

ry to section 841(a)(1) which even intimates that Congress intended the disjunctively proscribed offenses of section 841(a)(1) to be considered the "same" offense. *See* H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4614–18.

■ The Supreme Court has held that if two factually distinct offenses are involved, the presumption is that cumulative offenses were intended, and not vice versa. As the Court stated in *Garrett,* 471 U.S. at 793, 105 S.Ct. at 2418–19:

> The presumption when Congress creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on the specific issue does not establish an ambiguity or rebut this presumption....

The use of the disjunctive here indicates that Congress intended to create different offenses, and thus the statutory organization is not, in our view, controlling.

The "rule of statutory construction" announced in *Blockburger* supports this conclusion. As stated earlier, under *Blockburger* the offense of manufacturing marijuana and the offense of possessing marijuana with intent to distribute require different factual predicates, although there are obviously a plethora of situations where both offenses will be found. This, however, is not necessarily so as, for example, it was in *Brown,* 432 U.S. at 168, 97 S.Ct. at 2226–27 (where the offense of "joyriding" will *always* be made out if auto theft can be shown).

Finally, we note that the Tenth Circuit has squarely rejected the argument pressed by the defendant here. In *United States v. Zamora,* 784 F.2d 1025 (10th Cir. 1986), the court held that "manufacture and possession with intent to distribute are distinct offenses for which different facts must be proven." *Id.* at 1029. In *Zamora,* the defendant was convicted of manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and possession of methamphetamine with intent to distribute, also in violation of section 841(a)(1). The Tenth Circuit quoted the *Blockburger* test and then concluded that

> [p]ossession with intent to distribute and manufacture of methamphetamine are distinct charges requiring proof of different elements. The fact that much of the evidence used to convict under both statutes came from the same locale at the same time is not enough to disturb the broad discretion of the trial court in sentencing.

*Id.* at 1029.

While we note that *Zamora* uses the term "both statutes" loosely as the defendant there was convicted under one statute, *i.e.,* section 841(a)(1), we nonetheless agree with the analysis expressed by the Tenth Circuit as consistent with *Blockburger* and its progeny. Accordingly, we reject defendant's double jeopardy argument and conclude the district court properly sentenced defendant to consecutive punishments.[1]

**B.**

■ Defendant also argues that the district court abused its discretion in imposing a sixteen-year sentence. He argues that he was subjected to a disparate and excessive sentence and that comparison to the sentence he would have received under the

---

1. Although *Zamora* cites two cases in support of its conclusion, *United States v. Berick,* 710 F.2d 1035, 1040 (5th Cir.), *cert. denied,* 464 U.S. 899, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983), and *United States v. Welebir,* 498 F.2d 346, 352 (4th Cir. 1974), neither of these cases discusses the *Blockburger* issue raised by the defendant in the present case. They both, however, contain language indicating that manufacture and possession with intent to distribute can be considered separate offenses and thus are useful precedent for our conclusion in this regard.

Also, we do not consider our holding inconsistent with *United States v. Forester,* 836 F.2d

856 (5th Cir.1988). In *Forester,* the defendant was charged with attempting to manufacture methamphetamine and possession of P2P with the intent to manufacture methamphetamine, both in violation of § 841(a)(1). The Fifth Circuit found cumulative punishment could not be imposed as P2P is only "a precursor for methamphetamine," and thus the two counts against the defendant "involve successive steps in one criminal undertaking, the manufacture of methamphetamine." *Id.* at 859, 860–61. The court restricted its holding to the "specific, limited, and sharply defined facts of" the case. *Id.* at 859.

new United States Sentencing Commission Guidelines indicates the disparity in his punishment. We reject these arguments.

We note at the outset that it is well established that "[a]n appellate court's review of a sentencing court's decision is characterized by the utmost deference.... [I]t is not normally the role of an appellate court to second-guess the trial judge's determination of an appropriate sentence." *United States v. McCann,* 835 F.2d 1184, 1187 (6th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2004, 100 L.Ed.2d 234 (1988). Indeed, "[t]his circuit has long recognized the settled rule that district judges are vested with wide discretion in imposing sentences within statutory limits and the exercise of that discretion will not be disturbed on appeal except upon a plain showing of gross abuse." *United States v. Dudley,* 436 F.2d 1057, 1059 (6th Cir.1971).

In the present case, defendant was convicted of two counts of violating section 841(a)(1). Defendant could have received up to a forty-year term of imprisonment. *See* 21 U.S.C. § 841(b)(1)(C) (Supp.1988). In imposing a sixteen-year term of imprisonment, the district court took into consideration the fact that defendant was involved in a substantial marijuana operation and that he intended to distribute this marijuana. It should be noted that the twenty-year term of imprisonment provided for in 21 U.S.C. § 841(b)(1)(C) is triggered in any case involving 100 or more plants of marijuana. Here, it was stipulated that over 1,700 plants were involved.

In *United States v. Daniels,* 446 F.2d 967 (6th Cir.1971), we stated:

[T]he exercise of the District Court's discretion will be subject to appellate scrutiny under limited circumstances, such as: the reliance by the sentencing court on improper factors with a failure of the sentencing court to "evaluat[e] the available information in light of the facts relevant to sentencing."

*Id.* at 970 (quoting *Scott v. United States,* 419 F.2d 264, 266–67 (6th Cir.1969)). We find that the district court in the present case neither relied on improper factors nor failed to evaluate the available information in light of the facts relevant to sentencing. Moreover, the defendant has not suggested that the constitutional protections against disparate and excessive sentencing were violated as his sentence was not "so grossly disproportionate to the crime as to constitute cruel and unusual punishment." *McCann,* 835 F.2d at 1187 (quoting *United States v. Darby,* 744 F.2d 1508, 1525 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985)). Although defendant devotes substantial argument to the new sentencing guidelines, those guidelines are not applicable, as he concedes, to his case.

III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED in all respects.