

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-1661/1662-08

**EDUARDO GUERRERO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

HERVEY, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., and PRICE, and KEASLER, JJ., joined. COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined. HOLCOMB, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

## O P I N I O N

We granted discretionary review in this "multiple-punishments" double-jeopardy case to decide whether appellant may lawfully be convicted and punished (two 45-year concurrent prison terms) in the same proceeding for manufacturing and also for possessing with intent to deliver more than 4 but less than 200 grams of the same controlled substance (methamphetamine). We decide that these convictions and punishments do not violate double-jeopardy principles.

In cause number 2006-CR-9269, appellant was indicted for manufacturing more than 4 but

less than 200 grams of methamphetamine. In cause number 2006-CR-4524, he was indicted for possessing with intent to deliver more than 4 but less than 200 grams of methamphetamine (count 1) and also for possessing more than 4 but less than 200 grams of methamphetamine (count 2). These cases were tried together in a single proceeding. The evidence shows that the police discovered appellant operating a methamphetamine lab in his home where the police seized three glass containers containing a total of 80.45 grams of methamphetamine that appellant had manufactured (74.62 grams in one container, 4.49 grams in another container, and 1.34 grams in the other container). This methamphetamine had not yet been converted into a final, usable product. A Department of Public Safety Chemist (Budge) testified that the methamphetamine in each container was in a single layer of a two-layered, liquid solution. Budge testified:

> Q. [STATE]: I want to draw your attention specifically to a few, I guess, specific items and–located within an exhibit, State's Exhibit Number 40 in one of the buckets, was a Converse Number 06-220, a number that they assigned the evidence there at the police station?
>
> A. [BUDGE]: Yes.
>
> Q. And that bucket also contains your lab number of 345971. Did you conduct an analysis on that item found under Number 06-220?
>
> A. Yes, I did.
>
> Q. And what kind of test did you perform on that item?
>
> A. I did obtain a weight. I did a preliminary test on the substance. And I also did the confirmation test on it. And I also did a test because–it's a quantitative test to determine the percentage of the active ingredient in the substance also.
>
> Q. And Exhibit 06-220, what was the exhibit?
>
> A. The exhibit was a glass container containing a two-layered solution. It was a top layer and a bottom layer. And I did tests on both layers. And my testing indicated that the meth would have been on the top layer. So that's the net weight that I have

given is just of the top layer.

Q. And what weight did you obtain for the top layer?

A. It was 74.62 grams.

Q. And what substance–controlled substance did it come back as being?

A. It did contain methamphetamine in that solution.

Q. Next, I want to draw your attention to the Converse Evidence Number 41, which is a bucket that also contains the Lab Number 345971. Did you conduct testing on 06-229?

A. Yes.

Q. And what was 06-229–the items in it that was submitted?

A. It was a–like a soda-water plastic bottle containing–once again it was a two-layer liquid. And I did tests on both solutions and determined that the bottom layer would have been the one that contained the methamphetamine, so my net weight indication is of just the bottom layer.

Q. And what was the weight?

A. It was 4.49 grams.

Q. And, again, what was the substance that it tested for?

A. And I did do the similar–the test as I did on the other exhibit, the preliminary test and the GCMS, and it did contain also methamphetamine.

Q. Next, I'd like to draw your attention to Converse Exhibit 06-235, which is located within State's Exhibit Number 39, which is also a bucket with the Lab Number 345971. Did you conduct an analysis on 06-235?

A. Yes, I did.

Q. And what was the item that was submitted for testing under that number?

A. It was a glass jar containing a two-layer liquid. And I tested the bottom layer. And it was 1.34 grams. And it did contain methamphetamine.

Budge also described the process for manufacturing methamphetamine and the process for converting this manufactured methamphetamine into a final, usable product.

Q. The ephedrine or pseudoephedrine, is that the–is that used in the manufacturing process of methamphetamine?

A. Pseudoephedrine or ephedrine happens to be the immediate precursor to the methamphetamine, so, yes, it's the chemical we see mostly associated–mostly–or associated mostly with the manufacturer [sic] of methamphetamine.

Q. Could you talk the jury through the process of manufacturing methamphetamine or at least the process you believe would have been used based on the items seized from this laboratory.

A. The procedure very, very short–quickly, I'll try to go through it as quickly as I can–encompasses taking pseudoephedrine tablets and crushing them up, extracting the pseudoephedrine out of them, and when you do that, it leaves behind this–what we call pill dough that would be the–it would be similar to 06-0241–the Converse Number 06-241, that would be what would be left over.

Q. The blue powder?

A. Yes.

And then once you extract the pseudoephedrine out of the tablets, what you would do is you would take that and you would add a couple of other chemicals to it. And then the one procedure that this–what this appeared to be would be using iodine and red phosphorous [sic]. And iodine could be attained from–usually it's being attained from tincture of iodine. And the procedure how to do that is that you take tincture of iodine and you take hydrogen peroxide and hydrochloric acid and you mix them together and the iodine will come out of the solution as gray powder or powdery–it's actually a metal-looking substance. And you take this iodine, and they mix it with the red phosphorus.

And red phosphorus is quite easily attained from the striker pads off matches–of safety matches. And there is red phosphorus on those striker pads so it's quite easy to extract it out using some kind of organic solvent.

**You mix pseudoephedrine, iodine, red phosphorus together–and typically it's heated in some type of container on a hot plate. And once you do this, you actually create methamphetamine from the pseudoephedrine. I mean, that's how simple it really is. It's a one-step-type thing.**

And then from there, there's a series of procedures that you use to get rid of the iodine and the red phosphorous [sic] cause you don't want those in your finished product. And there's an extraction procedure to get rid of those. Once you get rid of those, you have to convert your methamphetamine into a usable product. And it's typically turned into a water-soluble salt using hydrochloric acid.

So the actual active ingredient or the actual form the methamphetamine is in is methamphetamine hydrochloride. So it's a salt form of methamphetamine; it's water soluble. Methamphetamine by itself is not water soluble. It's a slightly volatile liquid that's not–that doesn't dissolve in water. And so it's kind of hard to consume, so you have to go through this procedure, what they call powdering out using a–typically, they'll use a generator that creates the hydrogen chloride or the hydrochloric acid. And once you do that, you're done. That's the end product.

Q. I want to show you some pictures. In Exhibit 27, this is–there's been testimony that this was the Exhibit, I believe, 220 that was submitted to you for the testing that's located within the bucket.

A. Okay.

Q. Is that what you're talking about the separation process?

A. Yes. That is the–a really good indication of what the two-layer solution would look like. There's a top layer that's an organic solution and a bottom layer which is an aqueous solution or–it means it has water in it.

Q. Okay.

A. So that's a good picture of a separation of the two liquids.

* * *

Q. This item was seized from the home. It's a coffee--

A. It's a coffee pot.

Q. –pot with a tube coming out of it. Can you explain kind of what that might have been used for.

A. This is a real common thing that I see being used as a generator of hydrochloric acid. And what they do is they mix chemicals in the pot. And when they mix them together, it creates hydrogen chloride, which is anhydrous hydrochloric acid.

Hydrochloric acid is actually hydrogen chloride dissolved in water. And so to get it away from the water or create it as a gas you can use something like this. And what

they do is they–the gas will come out of the hose and you stick the hose under your solution of methamphetamine. And when the methamphetamine comes in contact with the hydrogen chloride, it becomes their finished product. We call them gas generators because it makes gas even though the gas is–it's hydrogen chloride.

(Emphasis supplied).[1]

During closing jury arguments, the State referred only to the container with 74.62 grams of methamphetamine as evidence of the "between four and 200 grams at that level that we're dealing with here in this case."[2] The State made no claim that the methamphetamine in each of the three containers was a separate offense, which might have required an election by the State. *See generally Phillips v. State*, 193 S.W.3d 904 (Tex.Cr.App. 2006). For example, the State made no claim that it was relying on the 74.62 grams of methamphetamine in one of the containers for a conviction on one of the charged offenses and that it was relying on the methamphetamine in any of the other containers (one containing 4.49 grams and the other containing 1.34 grams) for a conviction on any of the other charged offenses.[3] And the jury was not instructed under an each-container-is-a-

---

[1]

No claim is made in this case that the methamphetamine in the two-layered solution in each container does not meet the Health and Safety Code definition of "controlled substance." *See* § 481.002(5), TEX. HEALTH & SAFETY CODE ("controlled substance" is a substance listed in Penalty Group 1 and includes "the aggregate weight of any mixture, solution, or other substance containing a controlled substance"). Methamphetamine is listed as a Penalty Group 1 controlled substance. *See* § 481.102(6), TEX. HEALTH & SAFETY CODE.

[2]

The State argued:

And this was the one that the lab technician told you tested positive at 74.62 grams of methamphetamine, clearly, between four and 200 grams at that level that we're dealing with here in this case.

[3]

We note that the State could not rely solely on the container with 1.34 grams of methamphetamine as a separate offense since all three charged offenses involved a quantity of methamphetamine of more than 4 grams.

separate-offense theory of liability, which might have required juror unanimity as to each container. *See generally Ngo v. State*, 175 S.W.3d 738 (Tex.Cr.App. 2005). The jury convicted appellant of all three charged offenses "as charged in the indictment."[4] We also note that the State argued on direct appeal that appellant "was convicted for possessing with intent to deliver 74.62 grams" and that "appellant was also found guilty of the separate offense of manufacture of a controlled substance in cause number 2006-CR-9269, and this conviction, along with the possession of a controlled substance with intent to deliver under cause number 2006-CR-4524, should be affirmed." It is, thus, clear that appellant was convicted for manufacturing and also for possessing with intent to deliver the same methamphetamine.

Appellant claimed on direct appeal that it violated double-jeopardy principles for him to be convicted and punished for these two offenses. Finding this Court's decision in *Lopez v. State*[5] controlling, the court of appeals decided that these two offenses are the "same" under double-jeopardy principles because appellant's "manufacture of, and possession with intent to distribute, the same cache of methamphetamine were the result of the same original impulse" along "a continuum in the line of drug distribution." *See Guerrero v. State*, 271 S.W.3d 309, 316-18

---

[4]

The State conceded in the court of appeals that appellant's conviction for possessing more than 4 but less than 200 grams of methamphetamine (count 2 in cause number 2006-CR-4524) violated double-jeopardy principles because this is a lesser-included offense of possession with intent to deliver more than 4 but less than 200 grams of methamphetamine (count 1 in cause number 2006-CR-4524). The court of appeals set aside the possession conviction on that basis. If the methamphetamine in each of the three containers was prosecuted as separate offenses, then the former would not have been a lesser-included offense of the latter.

[5]

108 S.W.3d 293 (Tex.Cr.App. 2003).

(Tex.App.–San Antonio 2008).[6] The court of appeals vacated the manufacturing conviction and upheld the possession with intent to deliver conviction. *See id*. We granted review on the following ground presented in the State's discretionary review petition:

> The Court of Appeals erred in finding that jeopardy barred the prosecution of manufacturing methamphetamine and possession with intent to deliver methamphetamine on the basis that those offenses were the result of the same original impulse and could not be punished separately. That Court's opinion misconstrues this Court's opinion in [*Lopez*], and the Court of Appeals' holding is contrary to the holding in several federal circuit courts on this same vitally important question of state and federal law.

Section 481.112(a), TEX. HEALTH & SAFETY CODE, defines the "offense" of "Manufacture or Delivery of Substance in Penalty Group 1." In relevant part, it provides that a person commits an offense if the person "manufactures, delivers, or possesses with intent to deliver" a Penalty Group 1 controlled substance. In *Lopez*, the defendant was convicted of delivery of cocaine (by offer to sell) and also of possession with intent to deliver the same cocaine on evidence that one morning he offered to sell an undercover officer cocaine which he possessed later in the evening to complete the sale. *See Lopez*, 108 S.W.3d at 294-95. The defendant claimed that double-jeopardy principles prohibited him from being twice convicted and punished for this single sale of the same controlled substance. *See id*.

Relying on the portion of the Supreme Court's *Blockburger* decision addressing "the propriety of 'multiple punishments' assessed against a defendant, in a single proceeding, for his

---

[6] The State made no claim that the court of appeals should affirm appellant's manufacturing and possession-with-intent-to-deliver convictions under an each-container-is-a-separate-offense theory of liability.

multiple violations of the same narcotics statute by different acts,"[7] this Court stated that the double-jeopardy test for "sameness" in these circumstances is

> whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punished separately. . . . If the latter, there can be but one penalty. Under *Blockburger*, this test hinges on the legislative intent of the statute at issue.

*See Lopez*, 108 S.W.3d at 296 (footnote and internal quotes omitted).

The double-jeopardy issue in *Lopez*, therefore, turned on a question of legislative intent. *See Lopez*, 108 S.W.3d at 296. "[D]id the Legislature intend that individual steps taken toward a single sale of a single quantity of a controlled substance constitute one violation of Section 481.112(a), or did the Legislature intend that each step taken toward that single sale itself constitutes a different violation of the statute, so that there would be potentially as many different offenses as there are steps taken?" *See Lopez*, 108 S.W.3d at 296 (footnote omitted).

Noting that the ways of violating Section 481.112(a) are "points along a continuum in the line of drug distribution, from its original manufacture until its physical delivery to the ultimate consumer" and that the "gravamen of the offense of delivery is driven by the particular quantity of a particular contraband substance," this Court decided that the Legislature intended that an offer to sell a particular drug and the subsequent possession of that drug to complete that specific sale is one offense for which the State may not obtain two convictions. *See Lopez*, 108 S.W.3d at 297-300.[8]

---

[7] *See Blockburger v. United States*, 284 U.S. 299, 302 (1932); *see also Manrique v. State*, 994 S.W.2d 640, 645-46 (Tex.Cr.App. 1999) (McCormick, P.J., concurring).

[8] Presiding Judge Keller filed a concurring opinion in *Lopez* criticizing the "continuum" language in the majority opinion. *See Lopez*, 108 S.W.3d at 302-03 (Keller, P.J., concurring in the court's judgment). Presiding Judge Keller's concurring opinion expressed the view that manufacture and subsequent delivery of the same controlled substance are clearly two separate offenses under

This Court also stated that allowing two convictions under these circumstances would violate "double jeopardy under *Blockburger* because the steps in this single drug transaction were all 'the result of the original impulse,' therefore each step was not a new bargain." *See Lopez*, 108 S.W.3d at 300-01; *compare Blockburger*, 284 U.S. at 303 (holding that each distinct sale of a discrete quantity of the same drug to the same purchaser on different occasions constituted a distinct offense, because "the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one–that is to say, of a new bargain"). We set out the holding in *Lopez*:

> [Section 481.112(a)], however, cannot be turned on its head to allow several "delivery" convictions where there is only one single sale of one drug. Therefore, we hold that the offer to sell and the possession of drugs to complete that specific sale is one single offense. Although the State may charge the offense as being committed in either of these modes, it cannot obtain two convictions for the same sale under Section 481.112(a). The entry of two convictions in this case violates double jeopardy under the *Blockburger* test because the steps in this single drug transaction were all "the result of the original impulse," and therefore each step was not a "new bargain."

*Lopez*, 108 S.W.3d at 300-01 (footnotes omitted).

We disagree with any suggestion in the court of appeals' opinion that the "continuum" language in *Lopez* requires a decision that appellant cannot be convicted for manufacturing and also for possessing with intent to deliver the same controlled substance. This "continuum" language was not meant to imply that Section 481.112(a) creates some all-encompassing offense of generally engaging in the drug business rather than penalizing each act (manufacture and delivery) that it describes. *See Blockburger*, 284 U.S. at 302 ("The Narcotic Act does not create the offense of

---

Section 481.112(a) but that the majority's continuum language would require a decision that they are one offense. *See id*.

engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth.").

And we do not understand appellant to claim otherwise. Instead, we understand appellant to claim that, even though it is possible that manufacturing and possessing with intent to deliver the same controlled substance could lawfully be prosecuted and punished as separate offenses when accomplished by different acts, they may not lawfully be so prosecuted and punished in this case "because the manufacture and possession with intent to deliver were one and the same act [or transaction] under the facts of this case." We decide that manufacturing and possessing with intent to deliver the same controlled substance may lawfully be prosecuted and punished as separate offenses when accomplished by different acts. Section 481.112(a) disjunctively proscribes these two offenses, clearly indicating an intent that each is a separate offense. In addition, the act of manufacturing methamphetamine and the subsequent act of possessing this methamphetamine with intent to deliver it are discrete acts with different impulses (one impulse to manufacture and another impulse to possess for the purpose of delivering what has been manufactured). Possessing this controlled substance with intent to deliver it is a "new bargain" from the "original impulse" of manufacturing it. *See Lopez*, 108 S.W.3d at 296-97, 300-01. When accomplished by different acts, these are separate offenses under *Blockburger*, *Lopez* and the plain language of Section 481.112(a).[9]

---

[9]

We further note that there are other provisions in the Health and Safety Code making it illegal to possess various chemicals and other items used in the manufacturing process of various drugs including methamphetamine. *See* § 481.124, TEX. HEALTH & SAFETY CODE (defining offense of possession or transport of certain chemicals with intent to manufacture controlled substance); § 481.1245, TEX. HEALTH & SAFETY CODE (defining offense of possession or transport of anhydrous ammonia; use or tampering with equipment); § 481.136, TEX. HEALTH & SAFETY CODE (defining offense of unlawful transfer or receipt of chemical precursor); § 481.137, TEX. HEALTH & SAFETY CODE (defining offense of transfer of precursor substance for unlawful manufacture); § 481.138,

And we disagree with appellant that his "manufacture and possession with intent to deliver were one and the same act under the facts of this case." The evidence shows that appellant manufactured the methamphetamine that was in the two-layered solution in each container. This manufacturing process was complete with the production of this methamphetamine even though, during appellant's subsequent possession with intent to deliver this methamphetamine, appellant was to perform "a series of procedures" on the solutions to "convert the methamphetamine into a usable product."[10] Appellant's manufacture of the methamphetamine and his subsequent possession with intent to deliver it, though probably close in time, were discrete acts with different impulses (one impulse to manufacture and another impulse to possess for the purpose of delivering what has been manufactured). Appellant did, therefore, manufacture and subsequently possess with intent to deliver the same controlled substance by different and discrete acts.

---

TEX. HEALTH & SAFETY CODE (defining offense of unlawful transfer or receipt of chemical laboratory apparatus); § 481.138, TEX. HEALTH & SAFETY CODE (defining offense of transfer of chemical laboratory apparatus for unlawful manufacture). We take this statutory scheme as another indication that the Legislature has not intended to treat manufacture and possession with intent to deliver the same controlled substance as only one offense and that the Legislature considers the "impulse" underlying manufacture as very different from the "impulse" underlying possession with intent to deliver.

[10] We disagree with the State that the focus of manufacturing a controlled substance is on the production of a controlled substance "until a finished product [is] obtained" and that the focus of possession with intent to deliver is on "possession of a finished product" with intent to deliver it. This does not, in this case, comport with the Health and Safety Code definitions of "controlled substance" and "manufacture" and would require a decision that appellant did not commit either manufacture or possession with intent to deliver a controlled substance. *See* § 481.002(5) (defining "controlled substance" as a substance listed in Penalty Group 1 and includes "the aggregate weight of any mixture, solution, or other substance containing a controlled substance"); § 481.002(25), TEX. HEALTH & SAFETY CODE (defining "manufacture" to mean the production of a controlled substance "directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis").

Assuming that appellant's "manufacture and possession with intent to deliver were one and the same act under the facts of this case," we would still reject his double-jeopardy claim. This scenario would involve the same act or transaction (simultaneously manufacturing and possessing methamphetamine with intent to deliver it) violating two distinct statutory provisions (manufacture and delivery) as set out in Section 481.112(a). In these circumstances, *Blockburger* contains a rule of statutory construction which states:

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*See Blockburger*, 284 U.S. at 304.[11]

Under this *Blockburger* rule of statutory construction, the manufacture and possession-with-intent-to-deliver offenses are not the same because evidence that appellant manufactured methamphetamine is not required to establish the possession-with-intent-to-deliver offense and evidence of appellant's intent to deliver is not required to establish the manufacturing offense. We

---

[11]

*See also Littrell v. State*, 271 S.W.3d 273, 276 (Tex.Cr.App. 2008) ("The traditional indicium of . . . legislative intent is the so-called 'same elements' test of *Blockburger v. United States*. According to that test, it should be presumed that the Legislature did not regard two statutorily defined offenses to be the same if, 'each provision requires proof of a fact which the other does not.' However, for purposes of multiple-punishments analysis, the *Blockburger* test is only a tool of statutory construction–and not even an exclusive one. An accused may be punished for two offenses that would be regarded as the same under a *Blockburger* analysis if the Legislature has otherwise made manifest its intention that he should be.") (footnotes omitted); *Patterson v. State*, 152 S.W.3d 88, 92-94 (Tex.Cr.App. 2004) (Hervey, J., concurring) (in determining whether a defendant may be convicted and punished in the same proceeding for separate statutory offenses committed by the same act, if these separate statutory offenses are the "same" under *Blockburger*, then multiple convictions and punishments may not be imposed unless the Legislature has clearly provided otherwise, but, if these separate statutory offenses are not the "same" under *Blockburger*, then it is generally presumed that multiple convictions and punishments may be imposed unless the Legislature has clearly provided otherwise).

also note that federal courts, on facts legally indistinguishable from those in this case, have decided that manufacturing and possessing with intent to deliver the same controlled substance are separate offenses under a federal statute "virtually identical" to Section 481.112(a). *See United States v. Miller*, 870 F.2d 1067, 1068-72 (6ᵗʰ Cir. 1989) (manufacturing and possessing with intent to deliver the same marijuana are separate offenses under federal statute which, in relevant part, disjunctively made it unlawful for any person "to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance");[12] *United States v. Zamora*, 784 F.2d 1025, 1029 (10ᵗʰ Cir. 1986) (same with respect to manufacturing and possessing with intent to deliver the same methamphetamine and also stating that police seized a small plastic bag containing about 1/4 gram of methamphetamine and "3 bottles full of a sludge-like liquid containing methamphetamine"); *see also Lopez*, 108 S.W.3d at 301 (considering it persuasive that its holding "also comports with those of federal courts construing the analogous federal controlled substance statute").[13]

Appellant acknowledges that the "*Blockburger* test, standing alone, lends credence to the State's argument that [appellant] was convicted of two separate offenses" and that this "conclusion

---

[12]

We also note that *Miller* rejected the defendant's argument that the rule of statutory construction in *Blockburger* should not apply because "Congress placed the manufacturing and possession with intent to distribute offenses into one subsection" as these offenses are defined in Section 481.112(a). *See Miller*, 870 F.2d at 1071-72.

[13]

*See also Gore v. United States*, 357 U.S. 386, 388-90 (1953) (5-4 decision rejecting claim, in case involving three convictions and three consecutive sentences for one act of violating three separate drug statutes, that *Blockburger* should be overruled and also stating that what "is more to the point about the *Blockburger* decision is that the unanimous Court that rendered it then included three Justices conspicuous for their alertness in safeguarding the interests of defendants in criminal cases and in their insistence on the compassionate regard for such interests").

would appear to be bolstered by the federal Circuit Court cases cited by the State."[14] Appellant

nevertheless argues that he cannot be convicted and punished for manufacturing and also for

possessing with intent to deliver the same controlled substance under this Court's decision in *Ervin*

which recognizes that, even if two offenses are not the same under *Blockburger's* rule of statutory

construction, this rule of statutory construction "cannot authorize two punishments where the

legislature clearly intended only one." *See Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex.Cr.App.

1999).[15]

The issue then is whether the Legislature clearly did not intend for a defendant to be

convicted and punished for manufacturing and also for possessing with intent to deliver the same

controlled substance in a single act or transaction. In *Ervin*, this Court held that the Legislature

---

[14]

Appellant cites no federal Circuit Court cases to the contrary, nor have we found any. We have found cases deciding that simultaneously manufacturing and possessing the same methamphetamine are the same under *Blockburger*. *See, e.g., Beaty v. State*, 125 S.W.3d 196, 210-12 (Ky. 2003) (when defendant simultaneously manufactures and possesses the same methamphetamine, the possession is a lesser-included offense of the manufacture and these offenses are the same under *Blockburger* because a defendant cannot manufacture methamphetamine without also possessing it); *Patton v. State*, 35 P.3d 124, 131 (Co. 2001) (same but also noting that "a defendant may be convicted lawfully of both manufacture and possession of a controlled substance if the defendant is convicted of possessing the substance during one time period and manufacturing it during another time period, or separate transactions of possession and manufacture in the same time period"); *but see State v. Davis*, 72 P.3d 1134, 1137-39 (Wash. Ct. App. 2003) (declining to follow *Patton* because "a defendant can engage in methamphetamine manufacturing without possessing, actually or constructively, the controlled substance that is the final product"). These cases do not apply here because this is a manufacture and possession-with-intent-to-deliver case.

[15]

*See also Patterson*, 152 S.W.3d at 92-94 (Hervey, J., concurring) (in determining whether a defendant may be convicted and punished in the same proceeding for separate statutory offenses committed by the same act, if these separate statutory offenses are the "same" under *Blockburger*, then multiple convictions and punishments may not be imposed unless the Legislature has clearly provided otherwise, but, if these separate statutory offenses are not the "same" under *Blockburger*, then it is generally presumed that multiple convictions and punishments may be imposed unless the Legislature has clearly provided otherwise).

clearly did not intend for a defendant to be convicted and punished for manslaughter and also for intoxication manslaughter of the same victim during the same traffic accident in 1995 despite these two offenses not being the same under *Blockburger*. *See Ervin*, 991 S.W.2d at 806, 817. In *Ervin*, this Court noted that manslaughter and intoxication manslaughter clearly were alternative means of committing the same offense prior to September 1, 1994, and that subsequent legislative changes to the applicable statutes did not intend to change this. *See Ervin*, 991 S.W.2d at 814-17.[16] This Court also found it persuasive that the "vast majority of jurisdictions" hold "that variants of murder contained within the same statutory section are the same offense for double jeopardy purposes when the same victim is involved." *See Ervin*, 991 S.W.2d at 815. This Court also noted that manslaughter and intoxication manslaughter are result-of-conduct crimes that both focus on the death of an individual. *See Ervin*, 991 S.W.2d at 816. This Court in *Ervin* said:

> Finally, manslaughter and intoxication manslaughter have a common focus: the death of an individual. Both crimes are result of conduct crimes with death being the result. Because a person can die only once, two result-of-conduct homicide offenses involving the same victim must *necessarily* involve the same result. Given that the result is the focus of these offenses, the sameness of the result is some indication that the Legislature did not intend to impose multiple punishments.

*Id*. (Emphasis in original).

We believe that this case is clearly distinguishable from *Ervin*. We are not aware of any prior

---

[16] Before September 1, 1994, reckless homicide (which constitutes the offense of manslaughter under the current Penal Code) and intoxication homicide (which constitutes the offense of intoxication manslaughter under the current Penal Code) were alternative means in the same statute of committing the offense of involuntary manslaughter (which is no longer an offense under the current Penal Code). This is very different from Section 481.112(a), which makes it an offense for a person to "manufacture[], deliver[], or possess[] with intent to deliver" a controlled substance. Section 481.112(a) clearly does not make manufacturing, delivering or possessing with intent to deliver alternative means of committing a single offense (e.g., generally engaging in the drug business).

law (statutory or case law), and appellant cites none, that has ever treated manufacturing and possessing with intent to deliver the same controlled substance as alternative means of committing a single offense.[17] Moreover, these crimes do not have a common "focus." The focus of the manufacturing offense is on the production of a controlled substance while the focus of the possession-with-intent-to-deliver offense is on delivering what has been manufactured. In addition, appellant has not cited to any cases, and we have found none, holding that manufacturing and possessing with intent to deliver the same controlled substance are the "same" for double jeopardy purposes. The cases that we have found are to the contrary. *See Miller*, 870 F.2d at 1067; *Zamora*, 784 F.2d at 1029; s*ee also Gore*, 357 U.S. at 388-90 (construing applicable federal drug statutes to authorize multiple convictions for a single drug sale and noting that if "the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery–detection, prosecution and punishment–tighter and tighter."). We have found no indication that the Legislature has clearly intended only one conviction and punishment for manufacturing and possessing with intent to deliver the same controlled substance during the same act or transaction.[18]

---

[17]

We note that the 1973 Penal Code made it an offense for a person to "manufacture[], deliver[], or possess[] with intent to manufacture or deliver" a controlled substance. *See* Art. 4476-15, § 4.03(a), Acts 1973, 63rd Leg., ch. 429. Before this, it was unlawful for any person to "manufacture, possess, have, control, sell, prescribe, administer, dispense, compound, offer to sell, or offer to buy any narcotic drug." *See* Vernon's Ann. P.C., Arts. 725b to 725d.

[18]

Appellant claims it is significant that the title of Section 481.112(a) commences with the word "Offense" instead of "Offenses." Appellant claims that this "indicates the intent to treat the proscribed behavior as alternative means of committing a single offense." Appellant does not indicate what this single offense would be called (manufacture, delivery or something else). We also note that the Legislature has expressly provided that the title of a statute "does not limit or expand the meaning of a statute." *See* § 311.024, TEX. GOV'T CODE.

Judge Cochran's concurring opinion addresses only the alternative holding in this opinion that appellant's "simultaneously" manufacturing and possessing with intent to deliver the same methamphetamine does not violate double-jeopardy principles.[19] *See* Concurring Op. at 1 (double jeopardy principles "prohibit two convictions for simultaneously manufacturing and possessing with intent to deliver the same container of controlled substance"). However, the other and primary holding in this opinion is that appellant's manufacture of and his subsequent possession with intent to deliver the same methamphetamine were separate and discrete acts with each act a different bargain with a different impulse which the Legislature intended to treat as separate offenses under Section 481.112(a). *See supra* at 11-12; *see also* Concurring Op. at 2 ("Two distinct acts equal two violations of section 481.112"). The chemist's testimony clearly shows that appellant's manufacture of all of the methamphetamine in this case and his subsequent possession with intent to deliver this methamphetamine were separate, and not simultaneous, acts.

> [BUDGE]: You mix pseudoephedrine, iodine, red phosphorus together–and typically it's heated in some type of container on a hot plate. And once you do this, you actually create methamphetamine from the pseudoephedrine. I mean, that's how simple it really is. It's a one-step-type thing.[20]

---

Appellant also claims it is significant that the Legislature has met twice since our decision in *Lopez* without making any changes to Section 481.112(a). Appellant claims that this "gives rise to the supposition that, had the Legislature intended § 481.112 to define more than one offense, it would have amended the statute to reflect such intent during the post-*Lopez* 2005 and 2007 legislative sessions." *See Lopez*, 108 S.W.3d at 296 n.11. This Court's decision in *Lopez*, however, did not decide that Section 481.112(a) defined one offense. Post-*Lopez* legislative silence has no bearing on the question presented in this case.

[19]

*See supra* at 12 ("Assuming that appellant's 'manufacture and possession with intent to deliver were one and the same act under the facts of this case,' we would still reject his double-jeopardy claim.").

[20]

Appellant's act of manufacturing a controlled substance (methamphetamine) was complete

And then from there, there's a series of procedures that you use to get rid of the iodine and the red phosphorous [sic] cause you don't want those in your finished product. And there's an extraction procedure to get rid of those. Once you get rid of those, you have to convert your methamphetamine into a usable product. And it's typically turned into a water-soluble salt using hydrochloric acid.

The concurring opinion claims that the alternative holding in this opinion is inconsistent with several other states that, according to the concurring opinion, have concluded that "the simultaneous act of manufacturing and possessing (with or without the intent to deliver) the same quantum of controlled substance is a single offense, not multiple offenses, for double jeopardy purposes." *See* Concurring Op. at 7. To support this, the concurring opinion cites to several cases in footnote 14 of its opinion.[21] None of these cases, however, hold that simultaneously manufacturing and

at this point in time. *See* § 481.002(5), TEX. HEALTH & SAFETY CODE ("controlled substance" means a substance listed in Penalty Group 1 and includes "the aggregate weight of any mixture, solution, or other substance containing a controlled substance"); § 481.002(25), TEX. HEALTH & SAFETY CODE ("manufacture" means the production of a controlled substance "directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis"); Supra at 6 n.1 and at 12 n.10. Appellant's subsequent act of possessing with intent to deliver this methamphetamine was a new step or bargain motivated by a different impulse that occurred after the original impulse to manufacture this methamphetamine even though appellant was to perform "a series of procedures" on the two-layered solutions to "convert the methamphetamine into a useable product." *See supra* at 11-12; *Lopez*, 108 S.W.3d at 300-01.

The concurring opinion asserts that each of the two containers that contained more than 4 grams of methamphetamine "was in a different stage of the manufacturing process." *See* Concurring Op. at 9-10. The concurring opinion further states that the container with 74.62 grams "was seized while it was at an earlier stage of the methamphetamine manufacturing process than the two-layered liquid in the Dr. Pepper bottle" containing 4.49 grams of methamphetamine. *See id*.

The portions of the record set out above and on pages two through six of this opinion do not support an assertion that these two containers were "in a different stage of the [methamphetamine] manufacturing process." These portions of the record show that the methamphetamine in the two-layered solution in each of these containers had already been manufactured under the Health and Safety Code definition of "manufacture" in § 481.002(25) and that the methamphetamine manufacturing process was already complete when the police seized these containers.

21

One of these cases is the Colorado Supreme Court's decision in *Patton*, which is also cited

**possessing with intent to deliver** the same controlled substance is a single offense. These cases hold that simultaneously manufacturing and **possessing** the same controlled substance is a single offense essentially because the latter (possession) is a lesser-included offense of the former (manufacturing).[22] **Possession with intent to deliver** a controlled substance, however, is not a lesser-included offense of manufacturing the same controlled substance because under *Blockburger* each requires proof of a fact which the other does not. *See Miller*, 870 F.2d at 1071 ("The offense of possession with intent to distribute undoubtedly can be proved without any proof of manufacture of that substance. Furthermore, the offense of manufacturing, while likely involving proof of possession, does not require any proof regarding an intent to distribute the substance. . . . Thus, each statutory offense requires proof of an additional fact which the other does not."); *Zamora*, 784 F.2d

---

in footnote 14 of this opinion. *See* Concurring Op. at 7 n.14 and at 8 n.15. In *Patton*, the defendant was convicted for manufacturing and also for possessing the same methamphetamine after pleading guilty to an information that, according to the majority opinion, "contained no allegation other than that Patton possessed [methamphetamine] in connection with manufacturing it." *See Patton*, 35 P.2d at 127-28. In deciding that Patton pled guilty "to both the greater and lesser included offenses for the same transaction," *Patton* also noted that a "different case would have been presented if the counts to which Patton pleaded guilty recited that the period of the possession exceeded the period of the manufacture or that Patton possessed the controlled substance independently of his manufacture of it . . . . *See Patton*, 35 P.2d at 133 and at 131 ("a defendant may be convicted lawfully of both manufacture and possession of a controlled substance if the defendant is convicted of possessing the substance during one time period and manufacturing it during another time period"). In this case, the evidence shows that appellant's "period of the possession [with intent to deliver] exceeded the period of the manufacture" and that appellant "possessed [with intent to deliver] the [methamphetamine] independently of his manufacture of it." *See Patton*, 35 P.2d at 133. *Patton* does not support the position set out in the concurring opinion and actually supports the primary holding in this case that appellant manufactured and subsequently possessed with intent to deliver the same methamphetamine by separate acts.

[22]

*See also supra* at 14-15 n.14 (also citing cases deciding that simultaneously manufacturing and **possessing** the same controlled substance are the same under *Blockburger* and distinguishing these cases on the basis that this is a manufacture and possession-with-intent-to-deliver case).

at 1029 ("courts have uniformly held that manufacture and possession with intent to distribute are distinct offenses for which different facts must be proven").

The concurring opinion dismisses these "few federal cases" (i.e., *Miller* and *Zamora*) that support the alternative holding in this opinion apparently because they applied a "strict *Blockburger* elements test." *See* Concurring Op. at 8-9 (*Blockburger* is merely a rule of statutory construction and "is not a shibboleth that defines double jeopardy").[23] The alternative holding in this opinion, however, did not apply "a strict *Blockburger* elements test" or rely solely on *Blockburger* as "a shibboleth that defines double jeopardy." Upon concluding that manufacturing and possessing with intent to deliver the same controlled substance are not the "same" under *Blockburger*,[24] the analysis in support of the alternative holding in this opinion then conducted the legislative-intent analysis required by settled case law such as *Ervin*. *See supra* at 15-17 (issue is whether the Legislature clearly did not intend for a defendant to be convicted and punished for manufacturing and also for possessing with intent to deliver the same controlled substance in a single act or transaction and concluding that there is no indication that the Legislature has clearly intended that these offenses are the same); *see also Whalen v. United States*, 445 U.S. 684, 693 (1980) (when two simultaneously committed statutory offenses are not the "same" under *Blockburger*, consecutive sentences are permitted unless Congress "expressly provides otherwise;" and, where these offenses are the "same"

---

[23]

It should be noted that the author of the concurring opinion also authored *Lopez*, which found it persuasive that its holding comported "with those of federal courts construing the analogous federal controlled substance statute." *See Lopez*, 108 S.W.3d at 301. Apparently it is not so persuasive as it was in *Lopez* that the alternative holding in this opinion also comports "with those of federal courts construing the analogous federal controlled substance statute."

[24]

*See Miller*, 870 F.2d at 1071; *Zamora*, 784 F.2d at 1029.

under *Blockburger*, consecutive sentences are not permitted unless "specially authorized by Congress").[25]

Though claiming that double jeopardy principles "prohibit two convictions for simultaneously manufacturing and possessing with intent to deliver the same container of controlled substance,"[26] the concurring opinion would nevertheless affirm appellant's convictions. Noting that "[a]ppellate courts are not bound by prosecutorial theories when deciding whether the trial record establishes a double jeopardy violation," the concurring opinion would affirm appellant's convictions based on a theory, fabricated for the first time on discretionary review, that the two different containers or caches of methamphetamine weighing more than 4 grams are separate offenses (this has come to be known as the "multiple beaker" theory of liability). *See* Concurring Op. at 3-4, 11 (under this "multiple beaker" theory, "appellant could have been convicted of two counts of manufacturing methamphetamine, two counts of possessing methamphetamine with the intent to deliver it, or one count of each").[27] Relying on this Court's decision in *Gonzalez v. State*,[28] the

---

[25]

*Accord Ball v. United States*, 470 U.S. 856, 861 (1985) (assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the "same" offense under two different statutes); *Littrell*, 271 S.W.3d at 276; *Ervin*, 991 S.W.2d at 807; *Patterson*, 152 S.W.3d at 92-94 (Hervey, J., concurring); *Manrique*, 994 S.W.2d at 645-46 (McCormick, P.J., concurring).

[26]

It should be noted that the concurring opinion does not cite a single case holding that the simultaneous manufacture and possession with intent to deliver the same controlled substance is a single offense.

[27]

The container weighing 1.34 grams could not be used to support this "multiple beaker" theory since all three charged offenses involved a quantity of methamphetamine weighing more than 4 grams. Under a "multiple beaker" analysis, it would seem that the concurring opinion might have to address which one of these three offenses a jury would have to acquit appellant of.

[28]

8 S.W.3d 640, 643 (Tex.Cr.App. 2000).

concurring opinion would decide that, since appellant has not shown that these two caches of methamphetamine were simultaneously manufactured, then appellant has failed to show that a double-jeopardy violation is "clearly apparent" on the face of the record. *See id*.

*Gonzalez* does not support this. In *Gonzalez*, Count I of the defendant's indictment charged aggravated robbery in three separate paragraphs alleging alternative means of committing this offense. *See Gonzalez*, 8 S.W.3d at 640-41. Count II of the defendant's indictment charged injury to an elderly individual in a single paragraph. *See id*. These counts were prosecuted in a single proceeding and **were actually submitted to the jury as charged**. *See id*. The jury convicted the defendant of both offenses in a general verdict. *See id*. The defendant claimed for the first time on appeal that it was possible that these convictions violated double-jeopardy principles "because the injury to an elderly individual offense is a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three and the jury's general guilty verdict of aggravated robbery *could* have rested on one of these paragraphs." *See id*. (Emphasis in original). This Court decided that the defendant could not raise this claim for the first time on appeal because any double jeopardy violation was not "clearly apparent" on the face of the record. *See Gonzalez*, 8 S.W.3d at 643.

This case is distinguishable from *Gonzalez* as it is clearly apparent on the face of this record that the "multiple beaker" theory was not submitted to the jury and the jury convicted appellant for manufacturing and also for possessing with intent to deliver one undifferentiated cache of methamphetamine. *See* Concurring Op. at 3 (also noting that "the State treated the ['multiple beakers'] as one undifferentiated cache of methamphetamine at trial"); *Guerrero*, 271 S.W.3d at 318 (also noting that appellant was convicted for manufacturing and also for possessing with intent to deliver "the same cache of methamphetamine"). Since it is clearly apparent on the face of this record

that appellant's convictions for these offenses were based on the same undifferentiated cache of methamphetamine, the concurring opinion would have to decide that these convictions violate double jeopardy principles. *See* Concurring Op. at 1 ("double jeopardy principles prohibit two convictions for simultaneously manufacturing and possessing with the intent to deliver the same container of controlled substance").

Finally, the concurring opinion cites no authority to support its assertion that "[a]ppellate courts are not bound by prosecutorial theories when deciding whether the trial record clearly establishes a double-jeopardy violation." And this Court, following United States Supreme Court case law, has held that "due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury." *See Wooley v. State*, 273 S.W.3d 260, 268 (Tex.Cr.App. 2008). This Court, therefore, could not, consistent with due process, affirm appellant's convictions by fabricating a "multiple beaker" theory for the first time on discretionary review even though, according to the concurring opinion, such a theory does not violate double jeopardy principles. *See id.*[29]

The portion of the judgment of the court of appeals vacating appellant's manufacturing conviction is reversed. The remainder of its judgment is affirmed.

Hervey, J.

Delivered: December 9, 2009
Publish

---

[29]

The concurring opinion's "multiple beaker" theory of liability would also support a decision that each individually wrapped package of methamphetamine in a bundle of other individually wrapped packages of methamphetamine is a separate offense. This opinion does not decide that question.