**James Howard JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–96–01170–CR, 14–96–01171–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 3, 1998.

Kristine C. Woldy, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Before Justices YATES, AMIDEI, and FOWLER.

**OPINION**

WANDA McKEE FOWLER, Justice.

Over his plea of not guilty, a jury found appellant, James Howard Johnson, guilty of attempted capital murder. *See* TEX. PENAL CODE ANN. §§ 15.01, 19.02, 19.03 (Vernon 1994). The jury also found Johnson guilty of aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 1994). The jury fixed punishment for the conviction of attempted capital murder at thirty years in the Texas Department of Criminal Justice, Institutional

Division. The jury fixed punishment for the aggravated assault conviction at fourteen years confinement in the Texas Department of Criminal Justice, Institutional Division. The trial court convicted and sentenced accordingly. Johnson appeals on two points of error. We affirm the trial court judgment.

## THE CONTROVERSY

On July 13, 1995, Victor Martinez was installing a car stereo in his car while it was parked in the parking lot of the apartment complex where he lived. Other individuals at the apartment complex helped Martinez with the installation. Two of these individuals were Leonardo Marin and Warren Bishop a/k/a Jeff Kemp a/k/a Droopy. As these men worked on the car, a blue Buick Regal slowly passed by the apartment complex driving south on Beechnut. The car made a u-turn through the esplanade on Beechnut and began driving north on Beechnut. As the car passed the apartment complex, the passenger side window lowered and James Johnson fired at least five shots at the individuals around Martinez's car. Two bullets struck Marin in the chest. One bullet struck Martinez in the thigh.

At trial, Betty Joy Perry, testified that she used to date Bishop, but when she broke up with Bishop she dated Johnson. She also testified that after she ended her relationship with Johnson, she dated Bishop again. She also testified that after the shooting she received several phone calls from Johnson who stated that he had just done a drive by shooting and that she was next. The phone calls from Johnson continued throughout the night, which allowed other people to listen in on the conversations and confirm their occurrence.

Johnson was indicted in two different indictments. The pertinent part of the first indictment stated:

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, *JAMES HOWARD JOHNSON*, hereafter styled the Defendant, on or about *JULY 13, 1995*, did then and there unlawfully, during the same criminal transaction, shoot a deadly weapon, namely, a firearm in the direction of Leonardo Marin and Victor Martinez, hereafter styled the Complainants, with the specific intent to commit the Capital Murder of the Complainants.

The second indictment stated:

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, *JAMES HOWARD JOHNSON*, hereafter styled the Defendant, on or about *JULY 13, 1995*, did then and there unlawfully, intentionally and knowingly threaten imminent bodily injury to **VICTOR MARTINEZ**, hereafter called Complainant, **BY USING AND EXHIBITING A DEADLY WEAPON, NAMELY A FIREARM, NAMELY, BY SHOOTING SAID FIREARM IN THE DIRECTION OF THE COMPLAINANT.**

It is further presented that in Harris County, Texas, **JAMES JOHNSON**, hereafter styled the defendant, heretofore on or about **JULY 13, 1995**, did then and there unlawfully intentionally, knowingly, and recklessly cause bodily injury to **VICTOR MARTINEZ**, hereafter styled the Complainant, by **SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY, A FIREARM.**

After hearing the evidence, the jury convicted Johnson of attempted capital murder and aggravated assault.

## DISCUSSION AND HOLDINGS

In his first point of error, Johnson contends that double jeopardy barred these two convictions because each stems from the same transaction and because both require proof of the shooting of Victor Martinez. Aggravated assault is a lesser included offense of attempted murder. *See Williams v. State*, 622 S.W.2d 578, 579 (Tex.Crim.App. 1981); *Weaver v. State*, 855 S.W.2d 116, 122 (Tex.App.—Houston [14th Dist.] 1993, no pet.). The Double Jeopardy Clause of the United States Constitution embodies three

protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Garner v. State*, 852 S.W.2d 687, 688 (Tex.App.—Houston [14th Dist.] 1993, no pet.). According to both the United States Supreme Court and the Texas Court of Criminal Appeals, the greater inclusive and lesser included offenses are the same for jeopardy purposes. *See Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App. 1994). Here, the aggravated assault charge is a lesser included offense of attempted capital murder. So, for *double jeopardy* purposes, the attempted capital murder charge and the aggravated assault charge are the same offense.

Since the charges are the same offense, the State would violate the Double Jeopardy *Clause if* it prosecuted Johnson in a second *trial for one of the offenses if he had been* previously acquitted of the other. The State also would violate the Double Jeopardy Clause if it prosecuted Johnson in a second trial for one of the offenses if he had been previously convicted of the other. However, the State would not violate the Double Jeopardy Clause by prosecuting Johnson for both offenses in the same trial and imposing *concurrent* sentences for the offenses. *See Ex parte Herron*, 790 S.W.2d 623, 625 (Tex. Crim.App.1990). That is what happened here. Since the State did not violate the Double *Jeopardy Clause*, we overrule Johnson's first point of error.

■ In his second point of error, Johnson contends the evidence is insufficient to prove that he had any intent to kill either Victor Martinez or Leonardo Marin. When reviewing the *legal sufficiency* of the evidence, this Court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.

App.1993). This same standard of review applies to cases involving both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). On appeal, this Court does not re-evaluate the weight and credibility of the evidence, we consider only whether the jury reached a rational decision. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

Johnson contends that since he did not know Marin or Martinez and therefore had no intent to kill them. He also claims that any intent he had to kill Bishop could be transferred to Marin and Martinez only if the jury was instructed on transferred intent. Since the jury was not instructed on transferred intent, the jury had no evidence of intent to kill Marin or Martinez. In this case, transferred intent is irrelevant because his actions fall within the scope of attempted murder.

■ According to section 19.02 of the Penal Code, the offense of murder occurs when a person:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b) (Vernon 1994). Johnson does not dispute that he fired the weapon at the group of people standing at Martinez's car. He disputes that he intentionally tried to kill Martinez or Marin. However, "[t]he jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of that weapon." *Ross v. State*, 861 S.W.2d 870, 873 (Tex.Crim.App. 1992); *see Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Godsey v. State*,

719 S.W.2d 578, 580–81 (Tex.Crim.App.1986). The Texas Penal Code defines a firearm as a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon 1994). In this instance, it is reasonable to infer the weapon could have caused death. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). Thus, we believe a rational trier of fact could conclude that Johnson had the necessary intent to cause the death of Marin and Martinez by discharging a deadly weapon at least five times in their direction. We, therefore, overrule Johnson's second point of error.

Accordingly, we affirm the trial court's judgment.