

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1169-09

**LOUIS WAYNE TEETER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### NUECES COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

### O P I N I O N

Appellant was convicted of both attempted capital murder and aggravated assault of a single sheriff's deputy and was sentenced to 30 and 20 years' imprisonment, to be served concurrently.[1] Appellant asserts that those convictions violate the double-jeopardy clause of the Fifth Amendment. The Thirteenth Court of Appeals rejected that claim on appeal, finding that appellant had not

---

[1] He was also charged with aggravated assault on a second sheriff's deputy and violation of a protective order for assaulting his girlfriend. These convictions are not at issue here.

preserved error; appellant did not object at trial, and a double-jeopardy violation may not be raised for the first time on appeal unless the violation is apparent on the face of the record. The court of appeals found that the offense of aggravated assault as plead in count two of the indictment required proof of an element that was not required by the offense of attempted capital murder as plead in count one and were separate offenses under *Blockburger v. United States*, 284 U.S. 299, 302 (1932). Because the double-jeopardy violation was not apparent on the face of the record, appellant could not raise the claim for the first time on appeal. *Teeter v. State*, No. 13-07-00578-CR, 2009 Tex. App. LEXIS 5668 (Tex.App.–Corpus Christi-Edinburg, July 23, 2009) (not designated for publication).

The issue before this Court is whether the court of appeals erred in holding that appellant's convictions for aggravated assault and attempted capital murder of the same complainant in the same incident did not violate the double-jeopardy clause of the Fifth Amendment. We hold that the court of appeals did err and accordingly affirm the conviction for attempted capital murder and vacate the conviction for aggravated assault.

**Facts**

On February 25, 2007, Nueces County deputies Thomas Burnside and Dana Richardson responded to a domestic disturbance call at appellant's ranch. Deborah Wright, Teeter's live-in girlfriend at the time of the disturbance, testified that appellant had demanded sex from her. *Id*. at *2-3. When she refused, he beat her, forced her to perform oral sex on him, then continued to beat her. *Id*. at *2.

At the time of the disturbance, appellant's ex-wife, Susan Teeter, had a protective order against appellant that was not limited to her protection; it prohibited "family violence" and "dating violence" in general. *Id*. at *13. When Deputies Burnside and Richardson arrived on the scene, they

parked their patrol car near a locked gate that extended across appellant's driveway. Wright and her daughter M.W. approached the deputies from inside the gate. Wright kept saying, "We've got to get out of here, he's going to kill us." *Id*. at *3-4.

A few minutes later, appellant drove his pick-up truck down the driveway and parked within ten feet of the gate. *Id*. at *4. Deputy Burnside testified that appellant got out of his truck, leaving the engine and headlights on, and approached the gate. *Id*. Deputy Richardson told appellant that they were investigating a disturbance and needed to speak to him. Appellant refused to allow the deputies onto his property. *Id*. When Deputy Richardson asked appellant to open the gate and furnish the officers with identification, appellant again refused. *Id*. at *5.

As he spoke to appellant, Deputy Richardson could smell alcohol and noted that appellant's speech was slurred. *Id*. at *4-5. Deputy Richardson asked Deputy Burnside if there were signs of injury on Wright. Deputy Burnside responded affirmatively. Deputy Richardson testified that department policy is to arrest the suspect when there is evidence of family violence. *Id*. at *5. Thus, pursuant to department policy, Deputy Richardson decided to arrest appellant and informed appellant of his decision. *Id*.

Deputy Burnside testified that, when he placed his hand on a fence pole as if to cross the fence, appellant threatened him, saying that coming onto appellant's property would be the biggest mistake of Burnside's life. *Id*. at *5. Deputy Burnside and Deputy Richardson then unsnapped their holster covers and grasped the handles of their guns. *Id*. at *5-6.

About that time, Sergeant Don Watt, a shift supervisor, arrived at the scene, and Deputy Burnside explained the situation. *Id*. at *6. After Sergeant Watt considered what might be done to resolve the confrontation in a peaceful manner, he decided to arrest appellant. *Id*. Deputy Burnside

was the first to cross appellant's fence. Appellant ran towards his truck. Both Deputy Richardson and Sergeant Watt then crossed the fence and joined the chase. *Id.*

By the time Sergeant Watt reached the truck, appellant was rapidly driving backwards. *Id.* at *11. Deputy Burnside was half in and half out of the open driver's door, and his legs were dragging along the side of the truck. *Id.* As Sergeant Watt ran to catch up with the truck, it slipped out of gear, lost power, and stopped. *Id.*

Sergeant Watt approached the driver's side of the truck and sprayed appellant with pepper spray. *Id.* Appellant knocked the pepper spray from Sergeant Watt's hands and again began to accelerate in reverse. *Id.* Sergeant Watt was knocked away from the truck. The other officers tried to pull appellant out of the truck. *Id.* at *12. As the truck neared the house, Deputy Burnside fell to the side of the truck and was run over.[2] The truck then stopped for a final time. *Id.*

Sergeant Watt approached the truck and, when he was "in front of the headlight," he saw appellant holding a pistol in his left hand and pointing it at him. *Id.* at *13. Sergeant Watt, believing that he was going to be shot, drew his gun and fired at appellant. *Id.* Appellant did not fire his weapon.

Appellant was convicted of the attempted capital murder of Sergeant Watt, the aggravated assault of Sergeant Watt, the aggravated assault of Deputy Burnside, and violation of a protective order. *Id.* At *14. We granted review of only the convictions for the attempted capital murder and

---

[2] Deputy Burnside testified that, at one point, he drew his ASP baton and tried to hit appellant's arms and hands to get his hands free of the steering wheel. *Teeter*, 2009 Tex. App. LEXIS 5668, at *8. Appellant then reached down with his right hand between the driver's seat and the center console. Deputy Burnside grabbed appellant's right hand with both hands, pulling appellant's hand free of the seat, but as he pulled, the truck continued to travel in reverse. *Id.* at *8-9. While Deputy Burnside was falling off the truck, he turned the steering wheel so that the truck would steer off the drive-way and onto the grass. As he did so, he fell backwards onto the grass next to the driveway. Deputy Burnside's legs were run over by the truck as it rolled onto the grass. *Id.*

aggravated assault of Sergeant Watt.

**Preservation of Error**

Appellant did not raise a double-jeopardy violation at trial, so we first consider whether error was preserved. Pursuant to our holding in *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000), a double-jeopardy violation may be raised for the first time on appeal if undisputed facts show that the violation is clearly apparent on the face of the record and when enforcement of the usual rules of procedural default would serve no legitimate state interest. *See also Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). We offered additional guidance in *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006), stating that, when separate manners or means for an offense are presented to the jury disjunctively, the jury returns a general verdict, and at least one of the manners or means alleged would not constitute a double-jeopardy violation, a double-jeopardy violation is not apparent on the face of the record. *See e.g.*, *Guerrero v. State*, 305 S.W.3d 546, 560 (Tex. Crim. App. 2009).[3]

In this case, the indictment alleged only one manner or means for each offense, thus the concerns raised in *Langs* do not apply. While aggravated assault as alleged here required proof of a fact–a threat–that the alleged attempted capital murder did not, in proving attempted capital murder the state necessarily proved the elements of aggravated assault. We find that appellant's double-jeopardy claim can be resolved on the basis of the existing record, without the need for any additional evidentiary proceedings and that the double-jeopardy violation is clearly apparent on the face of the

---

[3] The *Guerrero* court pointed out that, in *Gonzalez,* the indictment contained multiple paragraphs, some that would result in a violation of double jeopardy and some that would not. The jury reached a general verdict that could have rested on a paragraph that would not have constituted a double-jeopardy violation. Because at least one of the paragraphs would not result in such a violation, the court could not conclude that the violation was clearly apparent on the face of the record. *Guerrero,* 305 S.W.3d at 560.

record. A finding of double jeopardy would require only vacating one conviction and retaining the other, concurrent conviction.[4] Thus, enforcement of the usual rules of procedural default would serve no legitimate state interest in this case. We conclude that appellant's claim of error was properly raised on appeal.

## Double Jeopardy

The Fifth Amendment of the United States Constitution mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The double-jeopardy clause protects against: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. *Bigon*, 252 S.W.3d at 369-70. This case involves the third category of protection.

Multiple punishment claims arise in two contexts: 1) one offense is a lesser-included offense of the other; or 2) the same criminal act is punished twice under two distinct statutes and the legislature intended the conduct to be punished only once. *Bigon*, 252 S.W.3d at 370 (citing *Langs*, 183 S.W.3d at 685).[5] Appellant alleges that he is being subjected to multiple punishments in the lesser-included-offense context.

To determine whether there have been multiple punishments for the same offense, we begin by applying the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 302 (1932). Under the *Blockburger* test, two offenses are not the same if one provision requires proof of

---

[4] When a defendant is subjected to multiple punishments, the remedy is to affirm the most serious offense and vacate the other convictions. *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006); *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997).

[5] An example of the former is where one is punished for the attempted assault of Y and assault of Y; an example of the latter is where one is punished for causing a single death by committing both intoxication manslaughter and manslaughter. *Bigon*, 252 S.W.3d at 370 (citing *Langs*, 183 S.W.3d at 685).

an element that the other does not. *Id*. at 304.[6] The *Blockburger* test, however, is a rule of statutory construction and is not the exclusive test for determining if two offenses are the same. *Bigon,* 252 S.W.3d at 370.[7] In *Bigon*, this court held that, under the cognate-pleadings approach adopted by this court, double-jeopardy challenges could be made even to offenses that have differing elements under *Blockburger* if the same "acts required" are alleged in the indictment. *Bigon*, 252 S.W.3d at 370 (citing *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)).

In *Girdy v. State*, 213 S.W.3d 315 (Tex. Crim. App. 2006), we held that if "the prosecution, in proving the elements of one charged offense, also necessarily proves another charged offense, then that other offense is a lesser-included offense." *Girdy,* 213 S.W.3d at 319.[8] If there is no clear legislative intent to punish the offenses separately, "multiple punishments for the criminal act that is subject of the prosecution is barred." *Id*.

**Appellant's and State's Argument**

In determining whether there has been a double-jeopardy violation, we consider the statutory elements of the offenses as modified by the allegations in the indictment. Count one of the present indictment, attempted capital murder, plead that

---

[6] The analysis in *Blockburger* is based on the face of the statute at issue. *Blockburger*, 284 U.S. at 304.

[7] The *Blockburger* test does not operate to override clearly expressed legislative intent. In *Ervin v. State*, 991 S.W.2d 804 (Tex. Crim. App. 1999), we laid out a non-exclusive list of factors to consider when determining whether the legislature intended to allow the same conduct to be punished under both of the offenses: 1) whether offenses are phrased in the alternative; 2) whether the offenses are named similarly; 3) whether the offenses have common punishment ranges; 4) whether the offenses have a common focus; 5) whether the common focus tends to indicate a single instance of conduct; 6) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and 7) whether there is legislative history containing an articulation of an intent to treat the offense as the same or different for double-jeopardy purposes. *Ervin*, 991 S.W.2d at 814.

[8] TEX. CODE OF CRIM. PROC. art. 37.09(1) provides that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

(1) appellant;

(2) with the specific intent to commit the offense of capital murder against Sergeant Watt;

(3) intentionally and knowingly pointed a gun at Sergeant Watt;

(4) this act amounted to more than mere preparation which tended but failed to effect the commission of said offense;

(5) Sergeant Watt was a peace officer acting in the lawful discharge of an official duty;

(6) appellant knew that Sergeant Watt was a peace officer.

Count two of the indictment plead that

(1) appellant;

(2) intentionally and knowingly threatened Sergeant Watt with imminent bodily injury by using a deadly weapon;

(3) Sergeant Watt was a peace officer acting in lawful discharge of an official duty;

(4) appellant knew that Sergeant Watt was a peace officer.

Appellant concedes that attempted capital murder and aggravated assault are not the "same offense" pursuant to a strict application of *Blockburger* because aggravated assault requires proof of a "threat," and attempted capital murder does not. Nevertheless he argues that, pursuant to *Bigon*, he is not precluded from relief on his double-jeopardy claim because double-jeopardy challenges may be made to offenses that have differing elements under *Blockburger*.

He contends that the element of "intentionally and knowingly threatening Sergeant Watt with imminent bodily injury by using a deadly weapon," as alleged in the aggravated-assault count, is incident to and subsumed by the element of "intentionally and knowingly pointing a gun" at complainant as alleged in the attempted-capital-murder count. Appellant's Brief at 11.[9] The state

_____

[9] In appellant's brief and in oral argument, appellant correctly stated that one is entitled to relief from double jeopardy in a multiple-punishment context if one is convicted of an offense that is incident to, or subsumed by, some greater offense. Appellant applies the rule to the facts of this case by arguing that he is entitled to relief because "the element of 'intentionally and knowingly pointing a gun' at Watt alleged in the attempted capital murder count of the indictment is incident to and subsumed by the element of 'intentionally and knowingly threatening' Watt with imminent bodily injury by using a deadly weapon as alleged in the aggravated assault count" of the indictment. Appellant's Brief at 11. According to the plain words of his statement, appellant mistakenly inverts the two offenses, referring to aggravated assault as the greater offense and attempted capital murder as the lesser-included offense.

counters that, while the "conduct of pointing a gun may be the basis of both aggravated assault and attempted [capital] murder . . . the separate elements of perception of the threat and intent to kill prevent either from being considered a lesser-included offense of the other." Respondent's Brief at 9.

The parties' disagreement rests on their differing interpretations of the term "threat." The state interprets "threat" to require that a victim must be aware of the threat. Appellant argues that his definitions of "threat," are common-sense interpretations of the word–"an expression of intention to inflict pain or injury" or "an indication of impending danger of harm"–and that neither definition requires a victim to know of the threat. Appellant's Petition for Discretionary Review at 7 (citing www.dictionary.com).

**Aggravated Assault By Threat**

In the past, we have considered whether a threat must be known by the intended victim. In *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006), we noted that Texas's assault-by-threat statute, Tex. Penal Code § 22.01(a)(2), does not explicitly indicate whether the intended victim must know of the threat. *Olivas*, 203 S.W.3d at 345. We also pointed out that dictionary definitions of the word may prove ambiguous. *Olivas*, 203 S.W.3d at 345-46.[10]

However, considering appellant's correct statement of the general rule, we presume that appellant meant to argue that he is entitled to relief because aggravated assault as plead in count two of the indictment is subsumed by and incident to attempted capital murder as plead in count one of the indictment.

[10] Webster's Dictionary, as referred to in *Olivas*, defines "threaten" to mean: "1) to declare an intention of hurting or punishing; to make threats against; 2) to be a menacing indication of (something dangerous, evil, etc.); as the clouds threaten rain or a storm; 3) to express intention to inflict (injury, retaliation, etc.); 4) to be a source of danger, harm, etc. to." *Olivas*, 203 S.W.3d at 345 (citing Webster's New Twentieth Century Dictionary of the English Language Unabridged 1901 (2d ed. 1983). Each of these definitions indicate only an act, without reference to perception by the target. Black's Law Dictionary defines the term as a "communicated intent to inflict harm or loss on another or on another's property, especially one that might diminish a person's freedom to act voluntarily or with lawful consent." Black's Law Dictionary 1203 (7th ed. 2000). This definition could indicate an intent that is communicated by the actor to a third party or to the intended recipient. *Olivas*, 203 S.W.3d at 345-

In *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985), we stated that it is a "simple matter to look at a penal proscription and determine whether the Legislature intended to punish 'specified conduct' as opposed to a 'specified result.'" For example, before the 1983 amendments, TEX. PENAL CODE § 21.02(a) prohibited a person from "having sexual intercourse with a female" when certain "circumstances surrounding" the intercourse were present. *Alvarado*, 704 S.W.3d at 39. By "specifying the 'nature of the conduct' prohibited (having sexual intercourse)[,] the Legislature indicated rape is a 'nature of conduct' crime and the required culpability must go to that element of conduct." *Alvarado*, 704 S.W.2d at 39. We find that the distinction between a nature-of-conduct offense and a result-oriented offense is instructive in interpreting the term "threat." *See e.g., Peterson v. State*, 836 S.W.2d 760, 765 (Tex. App.–El Paso 1992, pet. ref'd).

The assault-by-threat statute requires that a person intentionally or knowingly threaten another with imminent bodily injury. The plain language of the statute indicates that the legislature intended that the statute punish a specified conduct, "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE 22.01(a)(2). Accordingly, the focus is not on a victim's perception of the defendant's conduct, but rather on the conduct itself.

In *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984), a mother and her fourteen-year-old daughter were attacked by the defendant. The defendant stabbed the daughter with a knife and then stood over her holding the knife. The mother, not seeing the knife held by the defendant, attempted to help her daughter up, and as she did, the defendant stabbed the mother in the back of the head. *McGowan*, 664 S.W.2d at 357. We held that the state failed to prove the element of "threat"

---

46 (citing BLACK'S LAW DICTIONARY 1203 (7th ed. 2000). Thus, we concluded that the plain language of the statute is ambiguous as to whether a threat must be known to the victim.

to the mother "because there was no evidence presented that the defendant threatened the mother before stabbing her." *Olivas*, 203 S.W.3d at 348.[11] This holding is consistent with our current interpretation of "threat" because the facts did not indicate any intent by the defendant to threaten the victim with imminent harm, but instead showed only the harm resulting from the defendant's conduct.

In *Olivas*, the defendant made increasingly violent and demanding calls to the complainant over a two-week period. *Olivas*, 203 S.W.3d at 342-43. Then, when the complainant drove to her attorney's office to get a restraining order against the defendant, the defendant confronted her in the parking lot, hitting her passenger-side window as she tried to drive away. *Id.* at 343.

The conduct that resulted in the assault-by-threat charge occurred two weeks after the incident in the parking lot. While the complainant was driving her car, the defendant overtook her, shot at her car without her being aware that he was pointing a gun at her car, and then drove away. *Id.* at 343-44. The Court held that there was sufficient evidence to support a finding of a threat because the woman knew, after the fact, that the defendant had threatened imminent bodily injury by firing a gun at her car. *Id.* at 350. *Olivas* does not hold that a victim must know of a threat. Instead, it suggests that evidence of a victim's perception of a threat is useful for determining whether a defendant intended to threaten another with imminent bodily injury. *Id.* at 343-44.

The state argues that a threat requires that the victim know of a threat, but it offers little authority for its interpretation. It likens the facts of the present case to the facts of *Hall*, 225 S.W.3d 524, but in *Hall* the legal issue involved whether aggravated assault by threat was a lesser-included

---

[11] We noted that *McGowan* did not hold that the assault-by-threat statute requires a victim to be aware of a threat as it occurs. Instead, we stated that, based on the specific facts of the case–the defendant stabbed the mother in the back of her head without her knowing of the impending assault, the lack of any evidence of a threat, as opposed to the lack of perception of a threat–led this court to conclude that the state had failed to prove assault by threat. *Olivas*, 203 S.W.3d at 347-49.

offense of murder. The murder count of the *Hall* indictment alleged that the appellant caused the death of an individual by shooting the individual with a gun, with the intent to either cause the individual's death or to cause the individual serious bodily injury and commit an act clearly dangerous to life. *Id.* at 536. The indictment alleged only a result, an individual being shot, which is analogous to the facts in *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984), in which there was evidence of a victim being stabbed and no evidence of conduct intended to threaten imminent bodily injury. The state fails to recognize that intentional murder, as alleged in the *Hall* indictment, is a result-oriented offense[12] and that the facts alleged in the *Hall* indictment support only the result of defendant's conduct, and not the nature of defendant's conduct. The plain language of TEX. PENAL CODE § 22.01(a)(2) and past jurisprudence of this Court indicate that a threat does not require a result–that a victim knew of a threat–but it does require proof that, by his conduct, a defendant intended to cause an apprehension of imminent bodily injury.

**Aggravated Assault as a Lesser-Included Offense of Attempted Capital Murder**

The indictment in this case alleged that the appellant intentionally and knowingly pointed the gun at the complainant with the specific intent to commit the offense of capital murder. In order to find a double-jeopardy violation for multiple punishments in the context of a lesser included offense, proving the elements of attempted capital murder must also necessarily prove the elements of aggravated assault by threat. The act of pointing a gun, with the intent to kill, is an expression of an intention to inflict imminent bodily injury on the complainant.[13] Appellant's actions are

---

[12] *Cook v.* State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994); *Martinez v. State*, 763 S.W.2d 413, 419 (Tex. Crim. App. 1988).

[13] *See Johnson v. State,* 6 S.W.3d 323, 323 (Tex. App.–Houston [14 Dist.] 1999) (on remand from Court of Criminal Appeals; "We concluded that a double jeopardy violation did not occur because appellant was tried for both offenses in the same trial and the trial court imposed concurrent sentences. . . . But in light of *Ervin*, we now

distinguishable from those of the defendant in *McGowan* because, in *McGowan*, there was no evidence of an intent to threaten imminent bodily injury, but there was evidence of the result of the defendant's conduct–a stabbing. *Olivas*, 203 S.W.3d at 349. Therefore, the act of pointing the gun with intent to kill, without facts negating appellant's intent to threaten the complainant with imminent bodily injury, leads us to conclude that the element of threat–an intention to cause apprehension of imminent bodily injury–is subsumed by pointing the gun at the complainant.[14]

**Conclusion**

Under the pleadings in the present case, we find that aggravated assault was a lesser-included offense of attempted capital murder. Considering the facts as plead in count one and count two of the indictment, the act of threatening the complainant with imminent bodily injury by displaying a gun, is subsumed by the act of pointing a gun at the complainant with an intent to kill. For purposes of determining whether a double-jeopardy violation exists in a multiple-punishments context, the fact that aggravated assault as alleged in count two of the indictment is a lesser-included offense of attempted capital murder as alleged in count one of the indictment, establishes that the "facts

---

modify our previous decision and conclude that a double jeopardy violation occurred. *See [Ex parte] Ervin*, 991 S. W. 2d at 817. In *Ervin*, the court stated, "A double jeopardy violation occurs even when, as in this case, the sentences were concurrent. *Id.* Based on this case, we conclude that a double jeopardy violation occurred and that the trial court imposed multiple punishments for the same offense."); *Johnson v. State*, 983 S.W.2d 800, 802 (Tex. App.–Houston [14 Dist.] 1998) ("Here, the aggravated assault charge is a lesser included offense of attempted capital murder. So, for double jeopardy purposes, the attempted capital murder charge and the aggravated assault charge are the same offense.") (vacated and remanded, *Johnson v. State*, 991 S.W.2d 284 (Tex.Crim.App. 1999) ("The Court of Appeals held that aggravated assault is a lesser included offense of attempted capital murder, and these offenses are the same for double jeopardy purposes. . . . "The State would not violate the Double Jeopardy Clause by prosecuting Johnson for both offenses in the same trial and imposing concurrent sentences for the offenses. *See Ex parte Herron*, 790 S.W.2d 623, 625 (Tex. Crim. App. 1990)." *Johnson*, slip op. at 3-4.

At the time the Court of Appeals decided this case, it did not have the benefit of our opinion in *Ex parte Ervin*, 991 S.W.2d 804, 1999 Tex. Crim. App. LEXIS 2 (Tex. Crim. App. 1999)(not yet reported), where this Court determined that two offenses were the same for double jeopardy purposes.").

[14] In *Olivas*, we noted that an actor might threaten to stab by his conduct of waving the knife in the air or making some other threatening gesture. *Olivas*, 203 S.W.3d at 349.

required" are the same for the two offenses, and appellant is entitled to relief from a double-jeopardy violation.

When a defendant is subjected to multiple punishments for the same offense, the remedy is to affirm the most serious offense and vacate the other convictions. *Ex parte Cavazos*, 203 S.W.3d at 337; *Landers v. State*, 957 S.W.2d at 559. The "most serious offense" is defined as the offense for which the greatest sentence was assessed. *Bigon*, 252 S.W.3d at 373; *Ex parte Cavazos*, 203 S.W.3d at 338. Appellant was convicted of both the attempted capital murder and the aggravated assault of the same complainant in the same incident and was sentenced to 30 and 20 years' imprisonment respectively. Pursuant to the rule laid out in *Ex parte Cavazos*, we reverse the judgment of the court of appeals to the extent that it affirmed the portion of the trial court's judgment on aggravated assault and affirm the judgment of the court of appeals to the extent that it affirmed the portion of the trial court's judgment on attempted capital murder.

Delivered: September 22, 2010
Do not publish